United States District Court
Southern District of Texas
FILED

NOV 2 0 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JIMMY HERRERA,<br>  Plaintiff | § § § | |
| vs. | § § | CIVIL ACTION NO.:<br>B-01-024 |
| CTS CORPORATION,<br>  Defendant | § § § | |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

  COMES NOW, PLAINTIFF JIMMY HERRERA, and files this his Response to Defendant's Motion for Summary Judgment and in support would show the court as follows:

A. INTRODUCTION

1. This is a disability claim under the Americans with Disability Act, The Texas Commission on Human Rights Act and Title VII of the Civil Rights Act.

2. Plaintiff Jimmy Herrera suffers from chronic peripheral vascular disease which affects the circulation in his legs. The condition is painful and has the residual effect of causing ulceration in his lower extremities due to poor blood circulation. In late February or early March 2000, Plaintiff consulted a physician who suggested he have surgery done in an effort to improve the blood flow and lessen the pain and fatigue caused by his condition. (See Attachment "A").

3. Prior to the surgery, Herrera worked for Defendant CTS as a shipping clerk. The job required him to receive and weigh boxes containing stereo components and then shrink wrap them and load it into a truck with a forklift. The boxes varied in

1

size from 1 pound up to 90 pounds, however, the average box weighed 35 to 40 pounds. (See Attachment "A" Affidavit of Jimmy Herrera; hereinafter referred to as Attachment "A").

4. Before the Plaintiff decided to have the surgery done, he spoke to Defendant's General Manager Josie Molina about the surgery and how it would affect his job. Ms. Molina told Plaintiff that he could do clerical work until he was well enough to return to his old job. Based on the assurances, Mr. Herrera had the surgery. (See Attachment "A").

5. The Plaintiff had the surgery in the latter part of March 2000. A few days after the surgery, Mr. Herrera returned to work expecting to do clerical work as he had been promised. On his return, however, Molina told him that she was not going to give him an office position because she did not want to waste time training him. Instead, the Plaintiff was offered a janitorial position. The Plaintiff was in no condition to do that type of physical work so he decided to take his doctor's advice and recuperate at home a few days. (See Attachment "A").

6. During the time Plaintiff was out of work, he called in to find out when he could return to work. He was told not to return until he had a doctor's excuse allowing his return. The Plaintiff did as he was asked and returned back to work on March 31st with a doctor's excuse allowing his return to light duty. (See Attachment "B" Certificate to return to work). When the Plaintiff presented the excuse to Molina, he was told it "was not good enough" and he should return to the doctor for a more detailed excuse. (Attachment "A").

7. The Plaintiff was not able to contact his doctor for the new excuse until April 10,

2

2000. The certificate detailed Plaintiff should not lift more than 40 pounds and to rest as needed. (See Attachment "C" Letter from Rolando C. Ascarrunz, M.D.). With the excuse in hand, the Plaintiff was allowed to work one full day without incident. The Plaintiff performed janitorial and housekeeping chores, as well as driving a forklift. (See Attachment "A").

8. Despite being able to work, the Plaintiff was handed a letter dated April 12, 2000 stating that he was being let go because there was no work available for him and they were unable to accommodate his restrictions. (See Attachment "D" Letter from Josie Molina). This was obviously untrue because the Plaintiff was working. Moreover, there was plenty of things he could have done with the 40 pound restriction. As a result, the Plaintiff filed a lawsuit alleging disability discrimination.

9. On October 31, 2001, the Defendant filed its Motion for Summary Judgment claiming it is entitled to Judgment as a matter of law. It is to that motion that Plaintiff now responds.

## B. ARGUMENTS AND AUTHORITY

*Issue No. 1*   Was Plaintiff afforded Reasonable Accommodations?

### A. Was the ability to carry a specific amount of weight an essential function?

10. For the purposes of this motion, the Defendant concedes the Plaintiff was disabled. The only issue at bar is whether the Plaintiff was a qualified individual who, with or without reasonable accommodation could perform the essential functions of the employment position that such individual holds or desires. 42

3

U.S.C. §12111(8).

11. To determine whether a disabled individual is qualified requires a two part inquiry. The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc. 29 C.F.R. §1630.2(m) *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 n. 14 (5th Cir. 1997), *cert. denied*, 118 S.Ct. 1050, (1998). (This is not at issue and will not be addressed in this motion). The second step, which is pertinent, is to determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation. 29 C.F.R. §1630.2(m) App. This second step is broken into two sub-inquiries: First, can the individual perform the essential functions of the job without a reasonable accommodation? Second, if not, can the individual perform the essential functions of the job with a reasonable accommodation? *Burch v. City of Nacogdoches*, 174 F.3d 615, 619 (5th Cir. 1999).

12. In its Motion for Summary Judgment, the Defendant provided a job description of the position held by Plaintiff at his termination. The Plaintiff reviewed the document and asserts he could perform all of the functions listed in the description when he was terminated. Despite this, the Defendant asserts it was justified in terminating the Plaintiff because he could not lift more than 40 pounds. A review of the job description does not indicate that a shipping clerk is required to lift any particular amount of weight. (See Defendant's Exhibit "A"). Nonetheless, the Defendant conveniently used the benchmark identified by

4

Plaintiff's doctor to justify its termination of the Plaintiff. However, if the job description omits a function the employer considers essential, a court likely will find a fact question as to whether the function is essential. *Riel v. Electronic Data Sys.*, 99 F.3d 678, 682 (5th Cir. 1996).

### B. Could Plaintiff have performed the job with the restrictions from his doctor?

13. After Plaintiff had his surgery, he returned to the company and spoke to his supervisor David Gonzalez regarding his return to work. Mr. Gonzalez told the Plaintiff that the nature of his job had changed. According to Mr. Gonzalez the Plaintiff was going to receive boxes weighing 35 to 42 pounds, while the heavier boxes were being moved to a materials handler. (See Attachment "A"). The change was not made to accommodate the Plaintiff but rather a change in the nature of the work. Nevertheless, the change meant the Plaintiff could have performed his job without any accommodation to his disability. Moreover the handling of boxes weighing more than 40 pounds was not an essential function of Plaintiff's shipping clerk position. Assuming for the sake of argument, we accept the Defendant's self-serving statement that lifting over 40 pounds was an essential function of a shipping clerk's position, If the description tendered by the employer contains a function it claims is essential, but employees do not actually perform that function, a court may find a fact question exists. *See* 29 C.F.R. §1630.2(n) App.

### C. Could the Plaintiff have performed the essential functions of the job with reasonable accommodation?

14. The reasonable accommodation component is the essence of the ADA. A

5

cognizable reasonable accommodation is a change in an employer's procedures, facilities, or performance requirements that will enable the employee to perform the essential functions of, enjoy the benefits of, or compete on equal footing for the job in question. *Burch,* 119 F.3d at 314, 318. In the Fifth Circuit, the Plaintiff shoulders the burden of proof on reasonableness by proposing and putting forth evidence of an accommodation that is generally reasonable, or reasonable in the run of cases. *Johnson v. Gambrinus Company/Spoetzl Brewery,* 116 F.3d 1052, 1058-59 (5th Cir. 1997).

15. In his affidavit testimony, the Plaintiff states the handling of boxes in excess of 40 pounds was exceptional. Most of his work required the weighing of boxes in the neighborhood of 35-40 pounds. (See Attachment "A" ¶ g.). If a box was too heavy, the Plaintiff enlisted the help of a co-worker to help him lift the box. The company could have accommodated the Plaintiff by allowing him help if a box was too heavy. This would not have imposed a hardship on the company because that's the way things were done anyway. Once a Plaintiff meets his burden of proof on reasonableness, the employer may refute the proposed accommodation as unreasonable, but it must plead the defense of undue hardship and offer evidence to support it. *Riel,* 99 F.3d at 683. Reasonableness then becomes a fact issue for a jury.

   *Issue No. 2:* Should the filing of a Social Security claim bar Plaintiff's discrimination claim

16. The filing of a Social Security claim does not bar a claim of disability discrimination. In 1999, the U.S. Supreme Court overturned a Fifth Circuit case

that affirmed Summary Judgment on this point. Although the Supreme Court agreed that on the surface there is a conflict between SSA claims and ADA claims, the Court reasoned the two claims do not inherently conflict to the point where courts should apply a special negative presumption. According to the Court, there are too many situations in which an SSDI claim and an ADA claim can comfortably coexist. *Cleveland v. Policy Management Systems Corp.*, 119 S.Ct. 1597, 1602 (1999). The most common instance results from the fact that the SSA standard for disability does not take into account an employer's provision of reasonable accommodations. A person could be disabled under SSA but be qualified under the ADA when he or she can work only with a reasonable accommodation. *Id.* In our case, the Plaintiff was able to work and was in fact working when he was fired. After the Plaintiff was terminated, he was unable to afford medical care which he believes caused his condition to worsen to the point he was forced to apply for SSI benefits. (Attachment "A" ¶ i.). Moreover, the Plaintiff believes that if afforded reasonable accommodations such as getting help to lift the few heavy boxes beyond his capability, he could have continued to work. (Attachment "A").

17. For these reasons, the Plaintiff would respectfully request that this court deny Defendant's Motion for Summary Judgment and provide it any further relief to which it is entitled to both at law and equity.

Respectfully submitted,

LAW OFFICE OF MIGUEL SALINAS

BY: *[signature: Miguel Salinas]*

MIGUEL SALINAS
Attorney in charge
FEDERAL I.D. NO. 15171
STATE BAR NO. 17534750
803 Old Port Isabel Rd.
Brownsville, Texas 78521
956/550-1115 Telephone
956/550-1134 Telefax

8

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the true and foregoing copy of the Plaintiff's Response to Defendant's Motion for Summary Judgment was sent to the Defendant via hand delivery on this the 20th day of November, 2001 through its attorney of record:

Hon. John Chosy
LAW OFFICES OF JOHN E. CHOSY
1805 Ruben M. Torres Blvd.
Paseo Plaza Center, Suite B-21
Brownsville, Texas 78526

*Miguel Salinas*
Miguel Salinas

# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JIMMY HERRERA,** | § | |
|     **Plaintiff** | § | |
| | § | CIVIL ACTION NO.: |
| **vs.** | § | B-01-024 |
| | § | |
| **CTS CORPORATION,** | § | |
|     **Defendant** | § | |

## AFFIDAVIT OF JIMMY HERRERA

Before me, the undersigned Notary Public, on this day personally appeared Jimmy Herrera, who after being duly identified and sworn, did on his oath depose and say as follows:

a) My name is Jimmy Herrera. I am over the age of 18 and fully competent to make this affidavit. I have personal knowledge of the facts stated herein, and they are true and correct.

b) I suffer from chronic peripheral vascular disease which affects the circulation in my legs. In the latter part of 1999, I developed an ulcer in my right calf which caused me extensive pain and discomfort. Sometime in February or March of 2000, my doctor suggested I have surgery done in an effort to relieve the pain and fatigue. My doctor advised me that the surgery would mean I would have to be on light duty for an undetermined amount of time.

c) I was employed as a shipping clerk with CTS. My job required extensive physical exertion. I was concerned about my job and the ability to return to work, so I discussed my condition and the effects of the surgery with the manager at my place of employment, Josie Molina. Ms. Molina seemed sympathetic and assured me that I could return to work after the procedure. I had previous office experience and Ms. Molina said I could return to work doing clerical duties until I was well enough to return to my previous position. Based on what Ms. Molina told me, I made arrangements to have the surgery. Ms. Molina also approved my surgery leave.

d) I had the surgery done in March, 2000. I returned to work a few days after the procedure expecting to do clerical work in the office as Ms. Molina had promised. On my return, Ms. Molina told me she did not want to give me an office position because she would have to waste time training me. Instead, she said I could do janitorial duties such as mopping, sweeping, and taking the garbage out. I was in no condition to do that type of work and reminded her of her promise to allow me to do office work. She was unmoved by my request, so I told her I would be

"A"

       taking a few days off to fully recover from the surgery.

e)     During the week following my initial return to work, I kept in contact with Ms. Molina in an effort to return to work. She told me not to return to work until I received a doctor's excuse allowing me to return. I did as she asked and returned to work around March 30th. The excuse I brought in that day indicated that I should be allowed to work light duty. When I presented the excuse to Ms. Molina, she told me that it "was not good enough," and I should return to the doctor for a more detailed excuse.

f)     I was not able to contact the doctor until April 10, 2000. I returned to work with a new excuse that indicated I could not lift more than 40 pounds. Ms. Molina seemed satisfied with the excuse and I returned to work and did everything that was asked of me that day. Nevertheless, a day or so after returning to work, Josie Molina handed me a letter stating that I was being fired because there was no work available and they could not accommodate my lifting restriction. This was obviously untrue because I was working and could see there was plenty of work for me to do. I was never asked about what I could or couldn't do on account of my disability. Moreover, my doctor was never consulted about my prognosis or when my light duty restrictions would be removed. I was also never told about the company's light duty policy or any potential leave that was available for me. Finally, I reviewed the job description of a Shipping Clerk and I could perform all the functions listed in the description.

g)     Because of the lies, misrepresentations, and lack of concern about my condition, I believe I was discriminated against on account of my disability. I believe this because I could perform my job with little or no accommodation. As stated earlier, I worked as a shipping clerk. My job required me to receive and weigh boxes containing CTS components and then shrink-wrap them and load them in a truck with a forklift. The size of the boxes varied from as small as 1 pound up to 90 pounds, however, the average box weighed approximately 35 to 40 pounds.

h)     After the surgery, I returned to the company hoping to get my job back. I spoke to my former supervisor David Gonzalez, who told me that the operations had changed a little bit. He informed me that the components that I would be shipping and receiving were going to be in boxes weighing 35-42 pounds. He also told me the heavier boxes were being moved to a materials handler and would no longer go through my area. The change was not done for me, however, it would have allowed me to do my job with little or no accommodation. Moreover, before I was fired, I returned to work a full day and was able to do housekeeping chores and was able to drive a forklift without incident. As stated earlier, I could perform the essential functions of my job. In addition, there was plenty of work for me to do. The company's position that there was no work for me and that they were unable to accommodate my work restrictions were untrue.

i)  After I was fired, I was unable to afford health insurance and could not get the necessary medical care to attend to my condition. As a result, my condition worsened and I was forced to apply for social security benefits. I believe the inability to afford health care caused my condition to worsen to the point that I became disabled. I am doing better now. I believe that if I were afforded reasonable accommodation I could probably perform my job at CTS today.

_____
JIMMY HERRERA

SWORN TO AND SUBSCRIBED BEFORE ME on this the 19TH day of November, 2001.

_____
Notary Public State of Texas

[Notary seal: ANA M. OCHOA, Notary Public, State of Texas, My Comm. Exp. 12/27/2003]



## VALLEY DIAGNOSTIC CLINIC
2200 Haine / Harlingen, Texas 78550-8599
956/425-7200     1-800-338-4590

### Certificate to Return to Work or School

Name  **Herrera, Jimmy**

has been under my care from  **3/2/00**  to  **present**

and is able to return to (work)/school on  **3/31/00**

If unable to return to school/work you must return to this office on the above date.

☐ restrictions   ☑ light work   ☐ other _____

physical education   ☐ may take   ☐ limited   ☐ may not take

Comments  **Dx: PVD**

Doctor  _[signature]_
Date  **03/30/00**

M200434 (Rev. 5-97)

"B"

Defendant's Exhibit 2



# VALLEY DIAGNOSTIC CLINIC, P.A.

04/10/00

RE:  Jimmy Herrera
     VDC# 87390

To Whom It May Concern:

Mr. Herrera has been under my care since March 2000.  The patient suffers from severe peripheral vascular disease most likely the vasculitis type.  This is mainly effecting the right lower extremity and the left upper extremity.  As a consequences of this vascularity the patient developed an unhealing ulcer effecting the right lower extremity.  Arteriogram was performed demonstrating complete occlusion of the popliteal artery at the level of the right lower extremity and severe stenosis of the brachial artery in the left upper extremity.

On basis of these factors the patient should have some restrictions on his physical activity.  He will not be able to lift or push weights more than 40 pounds and he should rest as long as he develops pains during his walking activity.  The patient also has my medical advice to have further appointments with Dr. Kotta for further work-up of vasculitis and possibly he will be involved in hyperbaric treatments for this unhealing ulcer.

If you need any further assistance regarding Mr. Herrera please do not hesitate in contacting me.

Sincerely,

*[signature]*

ROLANDO C. ASCARRUNZ, M.D.

RCA/tl
DD:  04/10/00
DT:  04/10/00
JOB# 12095



2200 Haine / Harlingen, Texas 78550 / (956) 425-7200

April 12, 2000

Jimmy Herrera
Rt. 1 Box 101-J
San Benito Tx. 78586

Dear Mr. Herrera:

We have reviewed all our available jobs at the CTS Brownsville facility in light of your current work restrictions. Our evaluation has found that no work is available for you at this time as we are unable to accommodate your current work restrictions.

As a result of our evaluation, effective today, Wednesday, April 12, you will be placed on Layoff status. You will be eligible for recall subject to a change in your work restriction status.

Within the next few weeks you will receive information regarding your COBRA rights which allow you to continue your group medical and dental coverage at your own expense.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Josie Molina
Facility Manager
CTS Corporation
1100 Roosevelt St.
Brownsville TX. 78521

Cc:   Personnel file


EXHIBIT D