25

United States District Court
Southern District of Texas
FILED

JAN 0 8 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JIMMY HERRERA, | * | |
| Plaintiff | * | |
| | * | CIVIL ACTION NO.: |
| v. | * | B-01-024 |
| | * | |
| CTS CORPORATION, | * | |
| Defendant | * | |

## JOINT PRE-TRIAL ORDER

### 1.    Appearances.

Plaintiff:                                    Defendant:

Miguel Salinas                              John E. Chosy
Law Office of Miguel Salinas                John E. Chosy, Attorney at Law, P.C.
803 Old Port Isabel Road                    1805 Ruben Torres Blvd., Suite B-21
Brownsville, Texas 78521                    Brownsville, Texas 78526
Telephone:  (956) 550-1115                  Telephone:  (956) 544-6677
Telefax    :  (956) 550-1134                Telefax    :  (956) 544-6679
State Bar No.: 17534750                     State Bar No.: 04216300
Cameron County ID No.:_____                Cameron County ID No.: 00304801
Federal ID No. 15171                        Federal ID No.:  1054

### 2.    Statement of the Case.

This is a disability discrimination case.  Plaintiff Jimmy Herrera worked as

a shipping clerk with CTS' Brownsville facility.

The Plaintiff returned to work and was told by Josie Molina, CTS's

Brownsville facility manager, there was no work for him.

Mr. Herrera claims he was terminated from his employment with CTS

Corporation because of his disability.  CTS Corporation says that Ms. Molina

terminated Mr. Herrera because his doctor's restrictions meant that Mr. Herrera

could not do his job.

## 3.    Jurisdiction.

This court has diversity jurisdiction over the subject matter of this case

pursuant to 28 USC 1332. CTS Corporation is an Indiana corporation with its

principal place of business in Indiana and is therefore a citizen of Indiana; plaintiff

is a resident and therefore a citizen of Texas. The amount in controversy

exceeds the sum of $75,000 exclusive of costs and interests.

Neither party has raised any personal jurisdiction issues.

## 4.    Pending Motions.

Defendant's Motion for Summary Judgment (Docket No. 15) is the only

motion pending before the Court.

## 5.    Contentions of the Parties.

### Plaintiff

A. Plaintiff contends he was discriminated against and ultimately

terminated by his employer CTS corporation on account of his disability;

Peripheral Vascular Disease.

B. Plaintiff contends that he was a "qualified individual" who could, with or

without reasonable accommodation perform the essential functions of his job as

a shipping clerk.

C. Plaintiff contends his employer failed to make any effort to

accommodate his condition and terminated him before they even knew if he

could do his job.

D. Plaintiff contends that to reasonably accommodate his condition would

not have been an undue hardship to the defendant.

E. Plaintiff contends the actions of the defendant were done with malice.

F. Plaintiff contends that the filing of a Social Security claim does not prohibit the filing of an ADA claim of discrimination if he can show that with reasonable accommodation he could have performed the essential functions of his job.

## Defendant

A.     Plaintiff is not a "qualified individual with a disability" because he could not perform the essential functions of his job as a shipping clerk, even with a reasonable accommodation.

B.     Plaintiff's receipt of Social Security disability benefits raises a presumption that plaintiff cannot do the essential functions of his job. Cleveland v. Policy Mgmt. Systems Corp., 526 US 795 (1999).

C.     Plaintiff bears the burden of setting forth specific facts explaining how he can be disable to the extent he can collect Social Security disability benefits and yet be sufficiently able bodied to perform the essential functions of a shipping clerk's job with or without a reasonable accommodation. Reed v. Petroleum Helicopters, Inc., 218 F3d 477 (5 Cir. 2000).

## 6.     Admissions of Fact.

1.     Plaintiff Jimmy Herrera was employed at CTS Corporation's Brownsville facility from June 21, 1999 to April 12, 2000 when he was laid-off.

2.     CTS Corporation's Brownsville facility is a warehouse/distribution center.  As a warehouse, it receives component kits for its sister plant in

Matamoros, Mexico, transports the kits to Mexico, receives the finished product, and ships finished product to customers.  As a distribution center, it receives and stores finished product from overseas and ships the product according to instructions from other CTS facilities.

     3.     At all relevant times, Josie Molina was Brownsville Facility Manager for CTS and the person with general charge of CTS's Brownsville facility.

     4.     Plaintiff was employed by CTS Corporation as a shipping clerk.  His principal function was to weigh outgoing containers and calculate the correct shipping charges.

     5.     To weigh containers, plaintiff had to lift them off pallets, place them on a scale about 3 feet from floor level, lift the containers off the scale, put the containers back into their proper place on the pallet, shrink wrap them, then operate a forklift to load the containers onto a semi-trailer.

     6.     The containers which plaintiff was required to lift weighed up to 90 pounds although most weighed between 35 and 40 pounds.

     7.     From time to time, plaintiff assisted in the stock area by receiving packages, stacking them on a forklift, and loading packages onto storage shelves.  He would also assist with general housekeeping duties.

     8.     Including plaintiff and Josie Molina, there are 10 employees at CTS's Brownsville facility.

     9.     Plaintiff missed work ½ day on Wednesday March 22, 2000 and all day March 23, 2000 and March 24, 2000 for a medical procedure.

10.     Plaintiff returned to the CTS facility on Monday, March 27, 2000 and told Josie Molina that he could not lift over 5 pounds, could not squat or bend, and could not drive a forklift or do "housekeeping" work at the facility.

11.     Ms. Molina sent plaintiff home, requesting that he get a detailed medical excuse.

12.     On Tuesday, April 11, 2000, plaintiff returned to the plant with a letter from his doctor diagnosing peripheral vascular disease and restricting plaintiff from lifting or pushing weights more than 40 pounds.  The doctor further wrote that plaintiff should "rest as long as he develops pain during his walking activity."

13.     Plaintiff was given a letter on April 12, 2000 by Josie Molina, advising him that he was being laid-off because there was no work available for him in light of his work restrictions.

14.     There were no other open jobs at CTS's Brownsville facility at the time plaintiff was laid-off.

15.     Shortly thereafter, plaintiff applied for Social Security disability benefits.

16.     The Social Security Administration declared plaintiff disabled as of April 14, 2000, two days after he was laid off by CTS Corporation.

17.     Plaintiff has continued to receive and accept Social Security disability benefits.

18.     Plaintiff has not had a job since he stopped working for CTS Corporation.

19.     Plaintiff has not applied for work since he stopped working for CTS Corporation.

20.     Plaintiff has refused job retraining offered to him through the Texas Rehabilitation Commission.

21.     During the two weeks that Herrera was absent, his duties were divided between other non-clerical employees so that goods could continue to be shipped.

22.     Plaintiff has not applied for work since he stopped working for CTS Corporation.

23.     During the two weeks that Herrera was absent, his duties were divided between other non-clerical employees so that goods could continue to be shipped.

## 7.     Contested Issues of Fact.

1.     Whether plaintiff was disabled for purposes of the Texas Commission on Human Rights Act.

2.     Whether there was any reasonable accommodation that would have permitted plaintiff to do the essential functions of his job as a shipping clerk.

3.     Whether lifting or pushing containers that weighed in excess of 40 pounds was an essential function of plaintiff's job.

4.     Whether plaintiff ever requested a reasonable accommodation.

5.     Whether Defendant made any efforts to reasonably accommodate Plaintiff's disability.

6.      Whether accommodating Plaintiff's condition would have caused Defendant an undue hardship.

7.      Whether the fact Plaintiff worked a full day before he was terminated constitute a *prima facie* claim of discrimination and demonstrate that he was a qualified individual with a disability who with or without reasonable accommodation perform the essential functions of the job.

**8.      Agreed Propositions of Law.**

a)      The Texas Commission on Human Rights Act, Sec. 21.001, *et. seq.* of the Texas Labor Code is the substantive law applicable to this case.  Texas courts, however, look to federal precedent under Title VII of the Civil Rights Act of 1964 (42 USC 2000e) and the American with Disabilities Act (29 USC 12111) in interpreting the Texas Act.

b)      To establish a *prima facie* case, plaintiff must put forward evidence from which the jury could find that:

1.      Plaintiff is disabled – that is, that plaintiff has a mental or physical impairment that substantially limits a major life activity.

2.      Plaintiff could perform the essential functions of his job as a shipping clerk with or without a reasonable accommodation.

3.      Plaintiff's disability was a motivating factor in the termination of his employment.

c)      A job function is "essential" if the job position exists in order to perform the function.  Factors to be considered in determining whether a function is essential include the employer's judgment as to which functions are essential, written job descriptions, and the consequences of not requiring the incumbent to perform the job.

d)      Essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires.  The term does not include the marginal functions of the job.

e)      Plaintiff's receipt of Social Security disability benefits put the burden on him to establish facts that explain how he can be "disabled" for purposes of collecting disability benefits, yet do the essential functions of the shipping clerk's job.

f)      To receive Social Security disability benefits, plaintiff had the burden of convincing the Social Security Administration that his impairments are so severe that he cannot engage in any substantial gainful work which exists in the national economy.

g)      Defendant had no legal obligation to eliminate or re-allocate an essential function of the shipping clerk's job to accommodate plaintiff.

h)      Defendant had no legal obligation to assign another employee to assist plaintiff in the performance of the essential functions of his job.

i)      Defendant was not required to create a new position for plaintiff or to bump an employee from an existing job to accommodate him.

j)   Any compensatory or punitive damages that may be awarded to plaintiff are limited to a total of $300,000.

k)   Plaintiff's burden of proof on all elements of his case except punitive damages is preponderance of the evidence.

l)   To recover punitive damages, plaintiff must prove by clear and convincing evidence that defendant intended to discriminate against plaintiff or was recklessly indifferent about whether it discriminated against plaintiff and further actually intended to cause plaintiff harm beyond the loss of his job.

m)   Front pay is non-compensatory damages and are not limited by the statutory cap on damages

n)   The prevailing party is entitled to reasonable and necessary attorney's fees that are awarded by the court.

o)   An employer must attempt to reasonably accommodate the known disabilities unless it would impose undue hardship on the business.

## 9.   Contested Propositions of Law.

None, except those listed in Defendant CTS Corporation's Motion for Summary Judgment.

## 10.   Exhibits.

Exhibit lists, in duplicate, are attached.  All exhibits have been made available for examination by opposing counsel.

## 11.    Witnesses.

### Defendant

Josie Molina, CTS Corporation employee, will testify as to the facts and circumstances surrounding plaintiff's lay-off.

If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.

### PLAINTIFF

See attached witness list.

## 12.    Settlement.

All settlement efforts have been exhausted, the case cannot be settled and will have to be tried.

## 13.    Trial.

A.    The parties estimate trial will take 3 days, including charging the jury and final arguments.

B.    The parties are not aware of any logistical problems.

## 14.    Attachments.

Proposed questions for *voir dire* examination and a proposed charge are attached.

Signed this 8th day of January 2002.

           Respectfully submitted,

           Law Office of Miguel Salinas
           803 Old Port Isabel Road
           Brownsville, Texas 78521
           Telephone:  (956) 550-1115
           Telefax     :  (956) 550-1134

           by: _____
             Miguel Salinas
             State Bar No. 17534750
             Federal ID No. 15171
             Attorney in Charge

           ATTORNEY FOR PLAINTIFF


           John E. Chosy Attorney-at-Law, P.C.
           1805 Ruben M. Torres Blvd., Suite B-21

           Brownsville, Texas   78526
           Telephone:  (956) 544-6677
           Telefax     :  (956) 544-6679

           By: _____
             John E. Chosy
             State Bar No. 04216300
             Cameron County ID No. 00304801
             Federal I.D. No. 1054
             Attorney-in-Charge

           ATTORNEY FOR DEFENDANT

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JIMMY HERRERA, | * | |
| Plaintiff | * | |
| | * | CIVIL ACTION NO. |
| v. | * | |
| | * | |
| CTS CORPORATION, ET. AL., | * | |
| Defendant | * | |

## DEFENDANT'S PROPOSED *VOIR DIRE* QUESTIONS

Defendant CTS Corporation submits the following proposed voir dire

questions:

1.      This is a suit for disability discrimination.  The general facts alleged

by the parties in this case are:

> Plaintiff was laid-off because CTS Corporation believed that his medical
> restrictions prevented him from doing his job.

Do any of you know anything about the facts of this case through personal

knowledge or the media?

2.      Do you understand that this is a civil case?  This means that it is a

civil dispute rather than a criminal prosecution.

3.      Do you understand that the role of the jury is to be the "judge" of

the disputed facts in the case?  This means that each juror must listen to the

evidence admitted in court and decide the relative value of that evidence to

resolve questions that will be presented to the jury at the conclusion of the

evidence.

4.      Litigants are entitled to have their case heard by a jury that is fair

and impartial.  Do you understand that being a fair and impartial juror means that

a person does not have special feelings or special knowledge about an issue in the case or about the case itself that prevents that person from treating both sides of the dispute the same before hearing any evidence?  For example, someone who lost a child in an accident involving a drunk driver might have difficulty being a juror in an automobile collision case in which one party alleged the other was intoxicated.

5.      Are you acquainted with the plaintiff in this case?

6.      Are you acquainted with the defendant in this case?

7.      Are you acquainted with any of the attorneys who are here?

8.      Have you, anyone close to you, or any family member ever been represented by any of the attorneys representing the parties in this suit?

9.      Do you know anyone else on the jury panel?

10.     Have you, anyone close to you, or any member of your family (including you spouse, children, stepchildren, parents, brothers, sisters, children-in-law, brothers-in-law, sisters-in-law, or parents-in-law) ever worked for or been employed by CTS Corporation?

11.     Have you, a relative, or anyone close to you ever studied law?

12.     Are any of your spouses lawyers?

13.     Have you, a relative, or anyone close to you ever been employed as a police officer, sheriff, constable, or other law enforcement officer?

14.     Have you ever been a witness at trial, civil or criminal?

15.     Have you even been a juror in a trial, civil or criminal?

16.     Has any close friend or relative ever been involved as a plaintiff, defendant or witness in a civil case?

17.     If yes, is that civil case still pending?

18.     Based upon what you have heard about the facts of this case, was the civil action in which your friend or relative was involved similar in any way to this case?

19.     Was there anything about the civil case in which your friend or relative was involved that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

20.     Have you ever been a defendant in a law suit?

21.     If yes, is that case still pending?

22.     Based upon what you have heard about the facts of this case, is the civil action in which you are or were a defendant similar in any way to this case?

23.     Is there anything about the civil case in which you are or were a defendant that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

24.     Have you ever been a plaintiff in a suit?

25.     If yes, is that case still pending?

26.     Based upon what you have heard about the facts of this case, is the civil action in which you are or were a plaintiff similar in any way to this case?

27.     Is there anything about the civil case in which you are or were a plaintiff that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

28.     This case is expected to last three (3) days.  Do you have any confirmed vacation plans or other family matters that would conflict with jury service?

29.     Do you have any physical disability or condition that would interfere with your serving as a juror in this case?

30.     Have you heard anything during this jury-selection process that causes you concern about your ability to be a fair and impartial juror of the particular facts of this case?

31.     If you are employed:

       a.     Has anybody ever made a complaint within a company that you discriminated against a person on the job?

       b.     Have you ever made a complaint within a company that you or someone else has been discriminated against on the job?

32.     Do you know anyone who may be involved in a situation like what you have heard so far about this case?

33.     Have you ever been involved in a situation at work involving discrimination?

34.     Have you ever felt that you or someone you worked with had been discriminated against at work?

35.     Have you, or any member of your family ever made a complaint of discrimination at work?

36.     Given the nature of this case, is there anything in your background

and experience that would make it difficult for you to be fair and impartial?

37.     Is there any reason at all why you feel you should not be a juror in

this case?

Signed this 19th day of December 2001.

Respectfully submitted,

John E. Chosy Attorney-at-Law, P.C.
1805 Ruben M. Torres Blvd., Suite B-21
Brownsville, Texas   78526
Telephone:  (956) 544-6677
Telefax    :  (956) 544-6679

By:_____
            John E. Chosy
            State Bar No. 04216300
            Cameron County ID No. 00304801
            Federal I.D. No. 1054
            Attorney-in-Charge

ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served on all counsel of record in this matter in accordance with the Federal Rules of Civil Procedure by personal delivery on the 19th day of December 2001.

_____
John E. Chosy

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **JIMMY HERRERA,** | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION NO.:** |
| **vs.** | § | **B-01-024** |
| | § | |
| **CTS CORPORATION,** | § | |
| **Defendant** | § | |

**CHARGE OF THE COURT**

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the judges of the credibility of the witness and weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions that have previously been given you. I shall now give you additional instructions that you should carefully and strictly follow during your deliberation.

1.  Do not let bias, prejudice or sympathy play any part in your deliberations.
2.  In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.
3.  Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.
4.  You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss not concern yourselves with the effect of your answers.
5.  You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.
6.  You may render your verdict upon the vote of ten or more members of the jury.

The same ten or more of you must agree upon all of the answers made and to the entire verdict. You will not, therefore, enter into an agreement to be bound by a majority or any other vote of less than ten jurors. If the verdict and all of the answers therein are reached by unanimous agreement, the presiding juror shall sign the verdict for the entire jury. If any juror disagrees as to any answer made by the verdict, those jurors who agree to all findings shall each sign the verdict.

These instructions are given to you because your conduct is subject to review the same as that of the witness, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used int his charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning. Answer "YES" or "NO" to all questions unless otherwise instructed. A "YES" answer must be based on a preponderance of the evidence unless otherwise instructed. If you do not find that a preponderance of the evidence supports a "YES" answer, then answer "NO". The term "PREPONDERANCE OF THE EVIDENCE" means the greater weight and degree of credible testimony or evidence introduced before you and admitted in this case. Whenever a question requires other than a "YES" or "NO" answer, your answer must be based on a preponderance of the evidence unless otherwise instructed.

A fact may be established by direct evidence, by circumstantial evidence or both. A fact is established by direct evidence when proved bu documentary evidence or by a witness (es) who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

## WRITTEN QUESTION NUMBER 1:

Was disability a motivating factor in the CTS Corporation, Inc., d/b/a CTS Corporation decision to terminate Jimmy Herrera?

The Texas Commission on Human Rights Act provides that it is unlawful for an employer to deprive a qualified individual with a disability of an employment opportunity because of that person's disability.

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

Disability is a motivating factor when an employer refuses or fails to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability.

The term "reasonable workplace accommodation" means:

a.    modifications or adjustments to a job application process that enables an applicant with a disability to be considered for the position that the applicant desires;

b.    modifications or adjustments to the work environment, or to the manner or circumstances in which the position held or desired is customarily performed, that enables an individual with a disability to perform the essential functions of that position; or

c.    modifications or adjustments that enable an employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by other similarly situated employees without disabilities.

There may be more than one reasonable workplace accommodation.

"Disability" means:

d.    a mental or physical impairment, or a record of mental or physical impairment that substantially limits at least one major life activity;

e.    a record of such an impairment; or

f.    being regarded as having such an impairment.

The term "mental or physical impairment" means any physiological disorder, condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory (including speech organs); cardiovascular; reproductive; digestive; genitourinary; hemic; lymphatic; skin; and endocrine; or any mental or psychological disorder, such as mental retardation,organic brain syndrom, emotional or mental illness, and specific learning disabilities.

"Major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning or working.

"Substantially limits" (as applied to "major life activities" other than working") means that an individual is unable to perform a major life activity that the average person in general population can perform or that an individual is significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

"Substantially limits" (as applied to the "major life activity " of "working") means that an individual is restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.  The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

"Record of such an impairment" means that an individual has a history of or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities.

"Being regarded as having such an impairment" means an individual: (a) has a physical or mental impairment that does not substantially limit a major life activity but is treated by the employer as having such a limitation; (b) has a physical or mental impairment that substantially limits a major life activity only as a result of the attitudes of others towards the impairment at all, but is regarded by the employer as having such a substantially limiting impairment.

Disability is not a motivating factor in an employment decision if an individual's disability impairs the individuals"s ability to reasonably perform the job in question.

Answer "YES or "NO"


Answer _____

Texas Pattern Jury Charge 107.6, 107.11, 107.12


If you have answered question 1 "YES;" then answer the following question; otherwise do not answer the following question.


## <u>WRITTEN QUESTION NUMBER 2</u>

Do you find by clear and convincing evidence that the harm to Jimmy Herrera found in question number one resulted from actual malice?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Actual malice" means ill will, spite, evil, motive, or purpose to injure another.


ANSWER "YES" or "NO"


ANSWER_____

TPJC 110.33

If you have answered question 1 "YES;" then answer the following question, otherwise do not answer the following question.

## WRITTEN QUESTION NUMBER 3:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jimmy Herrera for his damages, if any, that resulted from such conduct?

Consider the elements of damages listed below and non other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you may find.

Reduce lost wages, if any, by wages earned, if any, in the past and wages, if any, which in reasonable probability will be earned in the future.

Answer separately, in dollars and cents for damages, if any.

(1)    Lost earnings and employment benefits in the past between date of discharge and today;

Answer _____

(2) Lost earnings and employment benefits that in a reasonable probability will be lost in the future;

Answer_____

Written Question Number 3 (continued)

(3)    Compensatory damages in the past which may include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary  losses;

Answer _____

(4)    Compensatory damages in the future which may include emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

Answer_____

PJC 110.30

If you have answered question 2 "YES;" then answer the following question; otherwise do not answer the following question.

## WRITTEN QUESTION NUMBER 4

What sum of money, if any, if paid now in cash, should be assessed against CTS D/B/A CTS and awarded to Jimmy Herrera as exemplary damages, if any, for the conduct found in response to Question 2?

"Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any are:

a)      the nature of the wrong;
b)      the character of the conduct involved;
c)      the degree of culpability of CTS d/b/a/ CTS
d)      the situation and sensibilities of the parties concerned
e)      the extent to which such conduct offends a public sense of justice and propriety;
f)      the net worth of CTS d/b/a CTS.

Answer in dollars and cents, if any.

Answer_____

TPJC 110.34

After you retire to the jury room, you will select your own presiding juror.  The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror-

1.    to preside during your deliberations
2.    to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,
3.    To write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,
4.    to vote on the questions,
5.    to write your answers to the questions in the spaces provided, and
6.    to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room.  Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

_____
JUDGE PRESIDING

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

(To be signed by the presiding juror if unanimous)


_____

PRESIDING JUROR

(To be signed by those rendering the verdict if not unanimous)

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

_____   _____

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JIMMY HERRERA,** | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION NO.:** |
| **vs.** | § | **B-01-024** |
| | § | |
| **CTS CORPORATION,** | § | |
| **Defendant** | § | |

## EXHIBITS LIST

P1    3/30/00 Certificate of Return to Work

P2    4/10/00 Letter From Rolando Ascarrunz, M. D.

P3    4/12/00 Letter From Josie Molina

P4    Shipping Clerk Job Description

P5    10/31/01 Declaration of Josie Molina

# VALLEY DIAGNOSTIC CLINIC

**2200 Haine / Harlingen, Texas 78550-8599**

**956/425-7200    1-800-338-4590**

### Certificate to Return to Work or School

Name _Herrera, Jimmy_

has been under my care from _3/2/00_ to _present_

and is able to return to (work)/school on _3/31/00_

If unable to return to school/work you must return to this office on the above date.

☐ restrictions  ☑ light work  ☐ other _____

physical education  ☐ may take  ☐ limited  ☐ may not take

Comments _Dx: PVD_

Doctor _[signature]_

Date _03/30/00_

M200434 (Rev. 5-97)

P1



# VALLEY DIAGNOSTIC CLINIC, P.A.

04/10/00

RE:  Jimmy Herrera
     VDC# 87390

To Whom It May Concern:

Mr. Herrera has been under my care since March 2000.  The patient
suffers from severe peripheral vascular disease most likely the
vasculitis type.  This is mainly effecting the right lower
extremity and the left upper extremity.  As a consequences of
this vascularity the patient developed an unhealing ulcer
effecting the right lower extremity.  Arteriogram was performed
demonstrating complete occlusion of the popliteal artery at the
level of the right lower extremity and severe stenosis of the
brachial artery in the left upper extremity.

On basis of these factors the patient should have some
restrictions on his physical activity.  He will not be able to
lift or push weights more than 40 pounds and he should rest as
long as he develops pains during his walking activity.  The
patient also has my medical advice to have further appointments
with Dr. Kotta for further work-up of vasculitis and possibly he
will be involved in hyperbaric treatments for this unhealing
ulcer.

If you need any further assistance regarding Mr. Herrera please
do not hesitate in contacting me.

Sincerely,

ROLANDO C. ASCARRUNZ, M.D.

RCA/tl
DD:  04/10/00
DT:  04/10/00
JOB# 12095

P2

2200 Haine / Harlingen, Texas 78550 / (956) 425-7200

April 12, 2000

Jimmy Herrera
Rt. 1 Box 101-J
San Benito Tx.  78586

Dear Mr. Herrera:

We have reviewed all our available jobs at the CTS Brownsville facility in light of your
current  work restrictions.  Our evaluation has found that no work is available for you at
this time as we are unable to accommodate your current work restrictions.

As a result of our evaluation, effective today, Wednesday, April 12, you will be placed on
Layoff status.  You will be eligible for recall subject to a change in your work restriction
status.

Within the next few weeks you will receive information regarding your COBRA rights
which allow you to continue your group medical and dental coverage at your own
expense.

If you have any questions, please do not hesitate to contact me.


Sincerely,

Josie Molina
Facility Manager
CTS Corporation
1100 Roosevelt St.
Brownsville TX. 78521


Cc:    Personnel file

P3

# CTS CORPORATION IN TEXAS

11.3

## JOB DESCRIPTION

| TITLE | CLASSIFICATION |
|---|---|
| Shipping Clerk | Non-Exempt |
| DEPARTMENT NAME | DEPARTMENT No. |
| Brownsville Warehouse | 006810 |
| REPORTS TO | REVISED DATE |
| Warehouse Manager | 11/12/97 |
| DIVISION | APPROVED BY |
| CTS Brownsville | Josie Molina |

**BASIC FUNCTION:**

Performs all duties per shipping procedures and work instructions to insure accurate and timely shipments.

**ESSENTIAL FUNCTIONS:**

1.- Use Pansophic 8.2c software to perform inquiries and tracing of inventory transaction and stock movement and inputting shipment information into inventory system.

2.- Perform shipping duties per written procedure and work instruction completely and accurately.

3.- Use electronic scales or hand count parts to determine physical (actual) counts.

4.- Operate forklift, use calculator, and lift containers of parts as required to perfor duties.

5.- Complete required paperwork properly and accurately to insure correct quantities are shipped and entered into inventory.

6.- Assist material handler to allow all stock areas to be serviced in an orderly and timely manner while maintaining accurate inventory balances.

7.- Kit and pack orders per packaging instructions when workload in other areas require additional help.

8.- Assist in receiving as needed.

Rev. A

Exhibit A

000167

# CTS CORPORATION IN TEXAS

## 11.3

### JOB DESCRIPTION

**ESSENTIAL FUNCTIONS:**

9.-   Housekeeping duties required.

10.-   Participate in team meetings and team projects as required.

## ADDITIONAL RESPONSIBILITIES

1.-   Other duties as assigned.

2.-

3.-

## EDUCATION, EXPERIENCE, AND KNOWLEDGE

1.-   High School Graduate or Equivalent

2.-   Good Math skills

3.-   Use of calculator

4.-   Good communication skills

5.-   Operate forklift

6.-   Heavy lifting

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JIMMY HERRERA, | * | |
|     Plaintiff | * | |
| | * | CIVIL ACTION NO.: |
| v. | * | B-01-024 |
| | * | |
| CTS CORPORATION, | * | |
|     Defendant | * | |

## DECLARATION OF JOSIE MOLINA

STATE OF TEXAS    *
COUNTY OF CAMERON  *

Josie Molina being first duly sworn, on oath says that:

1.    I am the Facility Manager at CTS Corporation, 1100 Roosevelt St., Brownsville, Texas 78521 ("CTS"). I have been employed by CTS since October 24, 1983 and have general charge of CTS's Brownsville Facility. The following facts are within my personal knowledge and, if called as a witness, I could testify competently with respect thereto.

2.    The CTS Brownsville facility is a warehouse/distribution center with two distinct functions. As a distribution facility, it receives finished goods from overseas and Mexico, stores the goods, packs them in cartons, then ships them to customers upon instructions from another CTS facility. As a warehouse, CTS receives component kits for its Mexican maquiladora, transports the kits to Mexico, receives finished product, and ships the finished product to customers. CTS Brownsville employs 11 persons besides myself, five of which are clerical workers.

P5

3.     Plaintiff Jimmy Herrera, was hired on June 21, 1999.  His position was Shipping Clerk.  He was the only Shipping Clerk employed by CTS.  The Shipping Clerk weighs all cartons shipped by CTS in order to calculate the correct shipping cost.  This job requires the Shipping Clerk to lift cartons weighing up to 70 pounds from a skid onto an electronic scale.  Once the carton is weighed, the clerk has to lift it off the scale, and push and maneuver the carton back onto the skid.  Use of the electronic scales to weigh cartons is an essential function of the Shipping Clerk's job.  Mr. Herrera spent a substantial portion of each day performing this task.  The Shipping Clerk is also required to lift cartons, operate a forklift, assist the Material Handlers in the stock areas, assist in receiving of cartons of products and do packing and housekeeping duties.  The job description for a Shipping Clerk is attached as Exhibit A.  With only 6 non-clerical employees in the facility, there was no one who could routinely assist the Shipping Clerk.

4.     Mr. Herrera was absent from work for a half day on Wednesday, March 22, 2000 and all day on Thursday, March 23 and Friday, March 24, 2000. When he returned to work on Monday, March 27, Mr. Herrera told me that he had "a procedure done" on March 23.  He said that he could not lift anything over 5 pounds, could not squat or bend, could not drive the forklift or perform any housekeeping duties.  I asked Mr. Herrera if he had a doctor's note for the period that he was absent, as well as documentation regarding the restrictions which he said he had.  Mr. Herrera said he had a note but he had forgotten to bring it in.

5.     I told Mr. Herrera that I would need a note from his doctor concerning his absences, documentation related to any restrictions he might have, and a release indicating that he was released to return to work. I told him that he needed to provide this documentation to me before he could return to work. Mr. Herrera indicated that he was feeling discomfort from the procedure. I told him that if he did not feel well, he should see his doctor and suggested that he could also obtain the required documentation from his doctor at that time. Mr. Herrera left.

6.     The need for someone to do the Shipping Clerk's job continued during plaintiff's absence. Accordingly, Nancy Arambula was moved from the ' office to the distribution department to do the weighing and preparation of shipping documents. David Gonzalez, plaintiff's supervisor, did Herrera's job in the warehouse department as well as his own with assistance hired on a temporary basis when needed. However, all of these jobs required lifting or pushing cartons over 40 pounds from time to time or maneuvering those cartons onto their proper place on a pallet so none were within Mr. Herrera's work restrictions.

7.     Mr. Herrera called in to work intermittently but other than coming to the warehouse to pick up his pay check on March 31, he did not come to the warehouse for work until Tuesday, April 11 when he brought in two documents. The first was a "Certificate of Return to Work or School" dated March 30, 2000, signed by Rolando C. Ascarrunz, M.D., which indicated that Mr. Herrera had been under the doctor's care since March 2, 2000. It also stated that Mr. Herrera

was released to return to "light work" on March 31, 2000. This document is attached as Attachment B.

8.     The second document given to me by Mr. Herrera was a letter dated April 10, 2000 from Dr. Ascarrunz which stated that Mr. Herrera "suffers from severe peripheral vascular disease" and "will not be able to lift or push weights more than 40 pounds and he should rest as long as he develops pain during his walking activity." This document is attached as Attachment C.

9.     I told Mr. Herrera that I would evaluate whether we had any work available for him but I thought it was unlikely that we would be able to accommodate his restrictions, given that CTS is warehouse operation devoted to receiving, storing, packing and shipping large cartons of goods.

10.     I consulted with Mary DeVous, Human Resources Manager for CTS Corporation, at CTS' corporate offices in Elkhart, Indiana. We reviewed the following factors: (1) There were currently no open jobs at CTS – Brownsville, so reassignment of Mr. Herrera to a vacant position was not possible; (2) Mr. Herrera, with a hire date of June 21, 1999, was the least senior employee in the facility, having worked for CTS less than one year, so any reassignment would require the displacement of a more senior employee; (3) Mr. Herrera could not lift or push weights of more than 40 pounds, which meant that he could not perform essential functions of his job, including but not limited to using the electronic scales to weigh cartons of products, lifting containers, assisting the Material Handlers in the stock areas, packing items weighing over 40 pounds, and assisting in receiving, and performing housekeeping duties; (4) Mr. Herrera was

the only Shipping Clerk; and (5) in our small warehouse operation, it would not be possible to create a new, "light duty" job for Mr. Herrera to accommodate him.

11.     After evaluating the factors set forth above, Ms. DeVous and I concluded that we had no choice but to lay off Mr. Herrera because we had no work available that he could do.  I notified Mr. Herrera that he was being laid off, effective April 12, 2000.  (See Attachment D.)

12.     In addition, the changes that are described in paragraph 6 of this Declaration meant that CTS Corporation no longer needed a Shipping Clerk as such since the functions of a Shipping Clerk had been distributed among several other employees, all of whom were required to lift over 40 pounds from time to time.  Because of the nature of CTS' operations in Brownsville and the limited number of employees, it was simply not possible to modify the Shipping Clerk's job (or any other non-clerical job) to avoid lifting over 40 pounds from time to time.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 30, 2001.

Josie Molina

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JIMMY HERRERA, | * | |
| Plaintiff | * | |
| | * | CIVIL ACTION NO. |
| v. | * | B-01-024 |
| | * | |
| CTS CORPORATION, ET. AL., | * | |
| Defendant | * | |

## DEFENDANT'S EXHIBIT LIST

| NO. | DESCRIPTION | ADM | EXC |
|---|---|---|---|
| D1 | Certificate to Return to Work | | |
| D2 | Letter from Roland C. Ascarrunz, M.D. | | |
| D3 | Letter from Josie Molina | | |
| D4 | Social Security Administration Determination Letter | | |
| D5 | Shipping Clerk Job Description | | |



## VALLEY DIAGNOSTIC CLINIC
2200 Haine / Harlingen, Texas 78550-8599
956/425-7200     1-800-338-4590

### Certificate to Return to Work or School

Name _Herrera, Jimmy_

has been under my care from _3/2/00_ to _present_

and is able to return to ~~work~~/school on _3/31/00_

If unable to return to school/work you must return to this office on the above date.

☐ restrictions   ☑ light work   ☐ other _____

physical education   ☐ may take   ☐ limited   ☐ may not take

Comments _Dx: PVD_

Doctor _R C Duran_

Date _03/30/00_

M200404 (Rev. 5-97)



Defendant's Exhibit
D1



# VALLEY DIAGNOSTIC CLINIC, P.A.

04/10/00


RE:  Jimmy Herrera
     VDC# 87390


To Whom It May Concern:

Mr. Herrera has been under my care since March 2000.  The patient
suffers from severe peripheral vascular disease most likely the
vasculitis type.  This is mainly effecting the right lower
extremity and the left upper extremity.  As a consequences of
this vascularity the patient developed an unhealing ulcer
effecting the right lower extremity.  Arteriogram was performed
demonstrating complete occlusion of the popliteal artery at the
level of the right lower extremity and severe stenosis of the
brachial artery in the left upper extremity.

On basis of these factors the patient should have some
restrictions on his physical activity.  He will not be able to
lift or push weights more than 40 pounds and he should rest as
long as he develops pains during his walking activity.  The
patient also has my medical advice to have further appointments
with Dr. Kotta for further work-up of vasculitis and possibly he
will be involved in hyperbaric treatments for this unhealing
ulcer.

If you need any further assistance regarding Mr. Herrera please
do not hesitate in contacting me.

Sincerely,


ROLANDO C. ASCARRUNZ, M.D.

RCA/tl
DD:  04/10/00
DT:  04/10/00
JOB# 11095



April 12, 2000

Jimmy Herrera
Rt. 1 Box 101-J
San Benito Tx. 78586

Dear Mr. Herrera:

We have reviewed all our available jobs at the CTS Brownsville facility in light of your
current work restrictions. Our evaluation has found that no work is available for you at
this time as we are unable to accommodate your current work restrictions.

As a result of our evaluation, effective today, Wednesday, April 12, you will be placed on
Layoff status. You will be eligible for recall subject to a change in your work restriction
status.

Within the next few weeks you will receive information regarding your COBRA rights
which allow you to continue your group medical and dental coverage at your own
expense.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Josie Molina
Facility Manager
CTS Corporation
1100 Roosevelt St.
Brownsville TX. 78521

Cc:    Personnel file


Defendant's Exhibit
D3

Case 1:01-cv-00024    Document 25    Filed in TXSD on 01/08/2002    Page 42 of 52

Notice of Award                        ...al ...Security Insurance

                                    Office of Central Operations
                                    1500 Woodlawn Drive
                                    Baltimore, Maryland 21241-1500
                                    Date:  October 17, 2000
                                    Claim Number:  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HA

JIMMY HERRERA
1041 EBANO
SAN BENITO, TX 78586-8112

You are entitled to monthly disability benefits beginning October 2000.

## The Date You Became Disabled



However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits.  For these reasons, your first month of entitlement to benefits is October 2000.

## What We Will Pay And When

- You will receive $706.00 for October 2000 around November 15, 2000.

- After that you will receive $706.00 on or about the third Wednesday of each month.

The day we make payments on this record is based on your date of birth.

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security.  If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Your Responsibilities

The decisions we made on your claim are based on information you gave us.  If this information changes, it could affect your benefits.  For this reason, it is important that you report changes to us right away.

Enclosure(s):
Pub 05-10153

C                              See Next Page


Defendant's Exhibit
D4

JOB DESCRIPTION

| TITLE | CLASSIFICATION |
|---|---|
| Shipping Clerk | Non-Exempt |
| DEPARTMENT NAME | DEPARTMENT No. |
| Brownsville Warehouse | C06810 |
| REPORTS TO | REVISED DATE |
| Warehouse Manager | 11/12/97 |
| DIVISION | APPROVED BY |
| CTS Brownsville | Josie Molina   Qel 11/12/97 |

**BASIC FUNCTION:**

Performs all duties per shipping procedures and work instructions to insure accurate and timely shipments.

**ESSENTIAL FUNCTIONS:**

1.- Use Parsophic 8.2c software to perform inquiries and tracing of inventory transaction and stock movement and inputting shipment information into inventory system.

2.- Perform shipping duties per written procedure and work instruction completely and accurately.

3.- Use electronic scales or hand count parts to determine physical (actual) counts.

4.- Operate forklift, use calculator, and lift containers of parts as required to perfor duties.

5.- Complete required paperwork properly and accurately to insure correct quantities are shipped and entered into inventory.

6.- Assist material handler to allow all stock areas to be serviced in an orderly and timely manner while maintaining accurate inventory balances.

7.- Kit and pack orders per packaging instructions when workload in other areas require additional help.

8.- Assist in receiving as needed.

Defendant's Exhibit
D5
Page 1 of 7

Rev A

000167

JOB DESCRIPTION

**ESSENTIAL FUNCTIONS:**

9.- Housekeeping duties required.

10.- Participate in team meetings and team projects as required.

## ADDITIONAL RESPONSIBILITIES

1.- Other duties as assigned.

2.-

3.-

## EDUCATION, EXPERIENCE, AND KNOWLEDGE

1.- High School Graduate or Equivalent

2.- Good Math skills

3.- Use of calculator

4.- Good communication skills

5.- Operate forklift

6.- Heavy lifting



Defendant's Exhibit
D 5
Page 2 of 2

Rev. A

Page 2 of 2

000189

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JIMMY HERRERA, | * | |
|     Plaintiff | * | |
| | * | CIVIL ACTION NO. |
| v. | * | |
| | * | |
| CTS CORPORATION, ET. AL., | * | |
|     Defendant | * | |

## DEFENDANT'S PROPOSED *VOIR DIRE* QUESTIONS

Defendant CTS Corporation submits the following proposed voir dire questions:

1.      This is a suit for disability discrimination.  The general facts alleged by the parties in this case are:

> Plaintiff was laid-off because CTS Corporation believed that his medical restrictions prevented him from doing his job.

Do any of you know anything about the facts of this case through personal knowledge or the media?

2.      Do you understand that this is a civil case?  This means that it is a civil dispute rather than a criminal prosecution.

3.      Do you understand that the role of the jury is to be the "judge" of the disputed facts in the case?  This means that each juror must listen to the evidence admitted in court and decide the relative value of that evidence to resolve questions that will be presented to the jury at the conclusion of the evidence.

4.      Litigants are entitled to have their case heard by a jury that is fair and impartial.  Do you understand that being a fair and impartial juror means that

a person does not have special feelings or special knowledge about an issue in the case or about the case itself that prevents that person from treating both sides of the dispute the same before hearing any evidence?  For example, someone who lost a child in an accident involving a drunk driver might have difficulty being a juror in an automobile collision case in which one party alleged the other was intoxicated.

     5.     Are you acquainted with the plaintiff in this case?

     6.     Are you acquainted with the defendant in this case?

     7.     Are you acquainted with any of the attorneys who are here?

     8.     Have you, anyone close to you, or any family member ever been represented by any of the attorneys representing the parties in this suit?

     9.     Do you know anyone else on the jury panel?

     10.     Have you, anyone close to you, or any member of your family (including you spouse, children, stepchildren, parents, brothers, sisters, children-in-law, brothers-in-law, sisters-in-law, or parents-in-law) ever worked for or been employed by CTS Corporation?

     11.     Have you, a relative, or anyone close to you ever studied law?

     12.     Are any of your spouses lawyers?

     13.     Have you, a relative, or anyone close to you ever been employed as a police officer, sheriff, constable, or other law enforcement officer?

     14.     Have you ever been a witness at trial, civil or criminal?

     15.     Have you even been a juror in a trial, civil or criminal?

16.    Has any close friend or relative ever been involved as a plaintiff, defendant or witness in a civil case?

17.    If yes, is that civil case still pending?

18.    Based upon what you have heard about the facts of this case, was the civil action in which your friend or relative was involved similar in any way to this case?

19.    Was there anything about the civil case in which your friend or relative was involved that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

20.    Have you ever been a defendant in a law suit?

21.    If yes, is that case still pending?

22.    Based upon what you have heard about the facts of this case, is the civil action in which you are or were a defendant similar in any way to this case?

23.    Is there anything about the civil case in which you are or were a defendant that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

24.    Have you ever been a plaintiff in a suit?

25.    If yes, is that case still pending?

26.    Based upon what you have heard about the facts of this case, is the civil action in which you are or were a plaintiff similar in any way to this case?

DEFENDANT'S PROPOSED *VOIR DIRE* QUESTIONS – PAGE 3

27.     Is there anything about the civil case in which you are or were a plaintiff that you believe could have an impact on your ability to be a fair and impartial juror of the facts in this case?

28.     This case is expected to last three (3) days.  Do you have any confirmed vacation plans or other family matters that would conflict with jury service?

29.     Do you have any physical disability or condition that would interfere with your serving as a juror in this case?

30.     Have you heard anything during this jury-selection process that causes you concern about your ability to be a fair and impartial juror of the particular facts of this case?

31.     If you are employed:

        a.      Has anybody ever made a complaint within a company that you discriminated against a person on the job?

        b.      Have you ever made a complaint within a company that you or someone else has been discriminated against on the job?

32.     Do you know anyone who may be involved in a situation like what you have heard so far about this case?

33.     Have you ever been involved in a situation at work involving discrimination?

34.     Have you ever felt that you or someone you worked with had been discriminated against at work?

35.     Have you, or any member of your family ever made a complaint of discrimination at work?

36.     Given the nature of this case, is there anything in your background

and experience that would make it difficult for you to be fair and impartial?

37.     Is there any reason at all why you feel you should not be a juror in

this case?

Signed this 19th day of December 2001.

Respectfully submitted,

John E. Chosy Attorney-at-Law, P.C.
1805 Ruben M. Torres Blvd., Suite B-21
Brownsville, Texas   78526
Telephone:  (956) 544-6677
Telefax    :  (956) 544-6679


By:_____
        John E. Chosy
        State Bar No. 04216300
        Cameron County ID No. 00304801
        Federal I.D. No. 1054
        Attorney-in-Charge

ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served on all counsel of
record in this matter in accordance with the Federal Rules of Civil Procedure by
personal delivery on the 19th day of December 2001.


_____
John E. Chosy

DEFENDANT'S PROPOSED *VOIR DIRE* QUESTIONS – PAGE 5

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JIMMY HERRERA,** | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION NO.:** |
| **vs.** | § | **B-01-024** |
| | § | |
| **CTS CORPORATION,** | § | |
| **Defendant** | § | |

## WITNESS LIST

Jimmy Herrera
FM 1577, Box 4490
San Benito, TX 78586
Plaintiff in this cause. Will speak on the discriminatory treatment he received as well as the facts and circumstances surrounding his termination from the defendant corporation.

Rosalinda Herrera
FM 1577, Box 4490
San Benito, TX 78586
Wife of Plaintiff. Will testify on the emotional pain and suffering that her husband's termination caused him.

Josie Molina
1100 Roosevelt
Brownsville, TX 78521
956/542-6897
Supervisor who discriminated against and eventually terminated me.

Humberto Portier
1100 Roosevelt
Brownsville, TX 78521
956/542-6897
Human Resources manager. Aware of circumstances of my condition and eventual termination.

David Gonzalez
124 Glenn Cir.
Brownsville, TX 78520
956/544-1158
Aware of discriminatory treatment Plaintiff received at work.

Nancy LNU
1100 Roosevelt
Brownsville, TX 78521
956/542-6897
    Former co-worker of Plaintiff.  Was allowed to do similar work as plaintiff without the lifting requirements imposed on Plaintiff.

Signed this 8th day of January 2002.

Respectfully submitted,

Law Office of Miguel Salinas
803 Old Port Isabel Road
Brownsville, Texas 78521
Telephone:  (956) 550-1115
Telefax    :  (956) 550-1134

by:

Miguel Salinas
State Bar No. 17534750
Federal ID No. 15171
Attorney in Charge

ATTORNEY FOR PLAINTIFF


John E. Chosy Attorney-at-Law, P.C.
1805 Ruben M. Torres Blvd., Suite B-21

Brownsville, Texas   78526
Telephone:  (956) 544-6677
Telefax    :  (956) 544-6679

By:

John E. Chosy
State Bar No. 04216300
Cameron County ID No. 00304801
Federal I.D. No. 1054
Attorney-in-Charge

ATTORNEY FOR DEFENDANT