# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
## -BROWNSVILLE DIVISION-

United States District Court
Southern District of Texas
ENTERED

**JAN 1 6 2002**

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| JIMMY HERRERA,<br>Plaintiff, | §<br>§<br>§ | |
| VS. | §<br>§ | CIVIL ACTION NO. B-01-024 |
| CTS CORPORATION,<br>Defendant. | §<br>§<br>§ | |

## MEMORANDUM OPINION

Pending before the Court is Defendant CTS Corporation's ("CTS") Motion for Summary Judgment (Docket No. 15) and Brief in Support of Motion (Docket No. 16).

### FACTS[1]

Jimmy Herrera suffers from chronic peripheral vascular disease. This is a painful condition that affects the circulation in his legs and causes ulcerations in his lower extremities as a result of poor blood circulation. In late March 2000, Herrera sought medical treatment for his condition and had diagnostic heart catherization performed to improve the blood flow and lessen the pain and fatigue caused by the disease.

During this time, Herrera was employed as a Shipping Clerk at CTS Corporation in Brownsville, Texas. He was the only Shipping Clerk that CTS employed. (Molina Declaration, CTS's Motion for Summary Judgment, Docket No. 16). As a Shipping Clerk, Herrera was responsible for weighing outgoing packages and calculating the correct shipping charges. To weigh

---

[1]Unless otherwise indicated, the background facts are taken from Herrera's response to CTS's motion for summary judgment (Docket No. 17).

1

the packages, Herrera had to lift them off pallets, place them on a scale, remove them from the scale, and put them back onto their proper place on the pallet. The packages varied in weight. The average package weighed 35 to 40 pounds, but a package could be as heavy as 90 pounds.

After his surgery, Herrera returned to work with a doctor's excuse stating only that he should be assigned "light duty work." Herrera explained to CTS's Facility Manager Josie Molina that "light duty" meant he could not lift over five pounds, could not squat or bend, and could not drive a forklift or do general housekeeping. (Herrera Deposition, p. 38). Molina asked Herrera to obtain a note from his physician and sent him home pending receipt of a more detailed doctor's excuse.

Herrera claims that around this time he spoke to his supervisor David Gonzalez who told him that the nature of his job had changed. According to Herrera, Gonzalez stated that Herrera would be responsible for the receipt and shipment of cartons that weighed between 35 and 42 pounds, and a Materials Handler would handle the receipt and shipment of heavier cartons. While Herrera was absent from work, CTS distributed Herrera's job functions among other non-clerical employees to maintain normal operations; all of these employees were required to lift over 40 pounds from time to time. (Molina Declaration, CTS's Motion for Summary Judgment, Docket No. 16).

Herrera returned to work with the doctor's excuse on April 10, 2000. According to the doctor's instructions, Herrera could not "lift or push weights more than 40 pounds and he should rest as long as he develops pains during his walking activity." (Exhibit 3, CTS's Motion for Summary Judgment, Docket No. 16). Herrera worked one full day without incident. He performed janitorial and housekeeping chores and drove a forklift, but there is no evidence that he lifted or carried cartons of any weight. On April 12, 2000, Herrera was handed a letter stating that he was terminated because there was no work available for him and that CTS was unable to accommodate his

restrictions.

Shortly thereafter, Herrera applied for Social Security Disability Insurance ("SSDI"). He was awarded benefits in October 2000 based upon the Social Security Administration's ("SSA") finding that he had been disabled since April 14, 2000, two days after CTS terminated his employment. Herrera has not held a job since he stopped working for CTS, has not applied for work, and has declined job retraining offered him through the Texas Rehabilitation Commission.

Herrera filed this action against CTS under the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et. seq.*, alleging that he was terminated as a result of his disability. CTS has now filed a motion for summary judgment, claiming that there are no genuine issues of material fact with respect to his disability discrimination claim.

### SUMMARY JUDGMENT STANDARD

Summary judgment evidence is viewed in the light most favorable to the nonmovant. *See Eastman Kodak v. Image Technical Servs.*, 504 U.S. 451, 456 (1992). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986).

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). Once the movant establishes the absence of a factual dispute, the burden shifts to the nonmovant to show that summary judgment is inappropriate. The nonmoving party may not rest upon the mere allegations or denials of its pleadings. *See Anderson*, 477 U.S. at 256. Instead, the nonmovant must provide

3

specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *See id.* at 242. An issue is material if it involves a fact that might affect the outcome of the suit under governing law. *See Douglass v. United Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). This evidence must do more than create a metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Unsubstantiated or conclusory assertions that a fact issue exists will not suffice. *See Anderson*, 477 U.S. at 256. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.* at 248.

DISCUSSION

The TCHRA is modeled after federal civil rights law. *See NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). The Act purports to correlate "state law with federal law in the area of discrimination in employment." *Id.* at 144. Federal law prohibiting disability discrimination by employers is found in the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et. seq.*, and thus courts must look to this statute in interpreting the TCHRA. *See id.* at 144.

The ADA prohibits an employer from discriminating against a "qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business[.]" *Id.* at § 12112(b)(5)(A).

To establish a prima facie case under the ADA, a plaintiff must show that he is a "qualified

4

individual with a disability." *See Holtzclaw v. DSC Communications Corp.*, 255 F.3d 254, 258 (5th Cir. 2001). A "disability" is "a physical or mental impairment that substantially limits one or more of [a person's] major life activities." 42 U.S.C. § 12102(2). The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8). The plaintiff must demonstrate that "with or without reasonable accommodation, [he] can perform the essential functions of the employment position." *Id.* CTS does not contest that Herrera is an individual with a disability. It does, however, claim that Herrera was not qualified for the job of Shipping Clerk because he could not lift more than 40 pounds. Thus, the sole issue presented to this Court is whether Herrera, under the TCHRA, is a qualified individual capable of performing the essential functions of his job with or without reasonable accommodation.

## I.

In determining whether a plaintiff is a qualified individual with a disability, the Court must first determine whether the plaintiff can perform the essential functions of the job he holds. *See Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir. 1993). If the Court concludes that the plaintiff is not able to perform the essential functions of the job, the Court must then determine whether any reasonable accommodation by the employer would enable the plaintiff to perform those functions. *Id.* at 1394-95.

Furthermore, a plaintiff's receipt of Social Security benefits does not automatically defeat a plaintiff's ADA claim; however, the plaintiff cannot simply ignore his SSDI contention that he is too disabled to work. To survive summary judgment, the plaintiff must explain why his SSDI contention is consistent with his ADA claim that he can "perform the essential functions" of his

5

previous job, at least with "reasonable accommodation." *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 798 (1999). An ADA plaintiff must "proffer a sufficient explanation" of any apparent inconsistency with the necessary elements of an ADA claim. *See id.* at 806. "A plaintiff cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity." *Id.* "The explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential function' of his job, with or without 'reasonable accommodation.'" *Id.*

## II.

The essential functions of a position include the basic, fundamental duties of the job; the marginal duties associated with the position are not taken into account in determining a disabled employee's qualifications. *See* 29 C.F.R. § 1630.2(n)(1). Physical criteria, such as the ability to lift heavy loads, must be necessary and substantially related to a person's ability to perform the essential functions of the job. *See Rios v. Indiana Bayer Corp.*, 965 F.Supp. 919, 922 (S.D. Tex. 1997). Evidence of whether a particular function is essential includes, but is not limited to: (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; (5) the terms of a collective bargaining agreement; (6) the work experience of past incumbents on the job; and (7) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. § 1630.2(n)(3). Moreover, an employer's written description of the essential functions of a job are entitled to

6

substantial deference. *See* 42 U.S.C. § 12111(8).

In response to CTS's motion, Herrera contends that lifting over 40 pounds is not an essential function of a Shipping Clerk's job. (Herrera's Response to CTS's Motion for Summary Judgment, Docket No. 17). He appears to suggest that because the average weight of a carton was about 40 pounds, the ability to lift heavier packages was not an essential function of a Shipping Clerk. It does not follow, however, that because the weight of the average carton was within his 40-pound weight restriction, the ability to lift heavier packages is not an essential function of a Shipping Clerk. *Bivins v. Bruno's, Inc.*, 953 F.Supp. 1558, 1559-60 (M.D. Ga. 1997) (holding that ADA plaintiff who had a ten-pound weight restriction could not perform the job of stock clerk despite that most items a stock clerk handled were under ten pounds).

CTS's written description for the position of Shipping Clerk includes a heading titled "Essential Functions." Among the "Essential Functions" include:

> . . .
> 2.   Perform shipping duties per written procedure and work instruction completely and accurately.
> 3.   Use electronic scales or hand count parts to determine physical (actual) counts.
> 4.   Operate forklift, use calculator, and lift containers of parts as required to perform duties.
> . . .
> 6.   Assist material handler to allow all stock areas to be serviced in an orderly and timely manner while maintaining accurate inventory balances.
> 7.   Kit and pack orders per packaging instructions when workload in other areas require additional help.
> 8.   Assist in receiving as needed.

(Exhibit A, CTS's Motion for Summary Judgment, Docket No. 16). Under the heading "Education, Experience, and Knowledge," the description also includes "heavy-lifting" as a prerequisite ability for the job. (Exhibit A, CTS's Motion for Summary Judgment, Docket No. 16).

7

.

The affidavit of the Facility Manager Josie Molina further demonstrates that a substantial part

of a Shipping Clerk's job is to lift, carry, and maneuver packages that may weigh over 40 pounds.

According to Molina:

> The Shipping Clerk weighs all cartons shipped by CTS in order to calculate
> the correct shipping cost.  This job requires the Shipping Clerk to lift cartons
> weighing up to 70 pounds from a skid onto an electronic scale.  Once the carton is
> weighed, the clerk has to lift it off the scale, and push and maneuver the carton back
> onto the skid.  Use of the electronic scales to weigh cartons is an essential function
> of the Shipping Clerk's job.  Mr. Herrera spent a substantial portion of each day
> performing this task.  The Shipping Clerk is also required to lift cartons, operate a
> forklift, assist the Material Handlers in the stock areas, assist in receiving of cartons
> of products and do packing and housekeeping duties. . . .  With only 6 non-clerical
> employees in the facility, there was no one who could routinely assist the Shipping
> Clerk.

(Molina Declaration, CTS's Motion for Summary Judgment, Docket No. 16).

At his deposition, Herrera testified that the average box he carried weighed 35 to 40 pounds

but that packages could weigh as much as 70 or 90 pounds.  (Herrera Depostion, p. 21).  Herrera also

stated in his affidavit that "[t]he size of the boxes (he carried) varied from as small as [one] pound

up to 90 pounds, however, the average box weighed approximately 35 to 40 pounds."  (Exhibit A,

Herrera's Response to CTS's Motion for Summary Judgment, Docket No. 17).  The summary

judgment evidence clearly demonstrates that a Shipping Clerk had to be able to lift as much as 90

pounds, and the ability to handle large weights is necessary and substantially related to a Shipping

Clerk's job.

In his affidavit, Herrera explains that he could perform the essential functions of his job

because when he returned to work, he "was able to do housekeeping chores and . . . drive a forklift

without incident."  (Exhibit A, Herrera's Response to CTS's Motion for Summary Judgment, Docket

No. 17).  While driving a forklift and performing housekeeping chores are among the duties of a

Shipping Clerk, they are not the essential functions of the position. A Shipping Clerk's job consists primarily of lifting, weighing, and carrying cartons that weigh as much as 90 pounds; however, as a result of his medical restrictions, Herrera could not perform the essential functions of his job at the time he was fired.

Herrera insists in his affidavit that after he "reviewed the job description of a Shipping Clerk," he concluded that he "could perform all the functions listed in the description." (Exhibit A, Herrera's Response to CTS's Motion for Summary Judgment, Docket No. 17). At his deposition, however, Herrera testified:

| | |
|---|---|
| Question: | Did you ever tell Josie that you could not lift anything over five pounds? |
| Answer: | Yes, I did. |
| Question: | Okay. No squatting or bending? |
| Answer: | Yes, I did. |
| Question: | And that you couldn't drive the forklift or do housekeeping? |
| Answer: | Yes, I did. |
| Question: | All right. Was there anything left of a shipping clerk's job that you could do consistent with those restrictions? |
| Answer: | I don't believe so. |

(Herrera Deposition, p. 38).

A party may not defeat a motion for summary judgment by using an affidavit that, without explanation, impeaches prior testimony. *See Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish

the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* (quoting

*Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). Because the

assertions made in Herrera's affidavit impeach his prior sworn testimony without explanation, this

Court must view the assertions with extreme skepticism. *See Nichols v. Healthsouth Corp.*, No.

3:00-CV-1487-P, 2001 WL 1081288, at *5 (N.D. Tex. Sept. 12, 2001). Herrera cannot create a

genuine issue of material fact simply by proffering an affidavit that conflicts with his prior sworn

testimony, without providing a sufficient explanation of that conflict. *See Copeland v. Wasserstein,

Perella & Co., Inc.*, __ F.3d __, 2002 WL 13624, at *7 (5th Cir. 2002) (holding that the Fifth Circuit

requires an explanation when the sole evidence purporting to create a genuine issue of material fact

is an affidavit that conflicts with deposition testimony).

Furthermore, there is an apparent inconsistency between the statements in Herrera's affidavit

and the statements he made in a questionnaire to the Social Security Administration. Herrera

reported to the SSA that he could not "finish a job on time because I have [to] sit for 10-15 minutes

to relieve the pain [in] my feet. [My] knees sometimes slip from [their sockets] when I'm walking

or carrying something." (Notice of Filing Social Security Records, Docket No. 23). According to

Herrera's application, he experienced pain to his feet, knees, and back from the activities of sitting,

standing, walking, lifting, bending, kneeling, squatting, climbing, and reaching overhead. He stated

that there were very few days that he did not feel weak. The only evidence Herrera proffers to

explain this inconsistency is his belief that he could perform the essential functions of the job and

the fact that he was working at the time he was fired. Herrera's present belief that he could perform

the essential functions of the job contradicts his prior sworn testimony, and this is insufficient to

create a genuine issue of material fact. *See Cleveland*, 526 U.S. at 806 (holding that a plaintiff

10

cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his own previous sworn statement). Moreover, merely because Herrera was working at the time he was fired does not suggest that he could perform the essential functions of his job. In fact, Herrera admits that he did not perform the duties of a Shipping Clerk on the last day that he worked.[2] (Herrera Deposition, p. 45). Thus, while Herrera performed marginal duties the day before he was fired, he makes no showing that he could perform the essential functions of a Shipping Clerk at that time.

## III.

Herrera makes one final attempt to avoid summary judgment by arguing that his Social Security claim does not take into account that he could perform the essential functions of a Shipping Clerk with reasonable accommodation. Because Herrera could not perform the essential functions of a Shipping Clerk, this Court must now determine whether any reasonable accommodation would have allowed Herrera to perform the essential functions of a Shipping Clerk. The plaintiff must prove that "an accommodation is possible that would enable [him] to perform the 'essential functions' of the position [he] holds or seeks." *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 92 (Tex.App.–Austin 1995). Furthermore, the ADA does not require an employer to always provide an employee with the best possible accommodations or in the specific manner the employee requested; the accommodation must only be reasonable. 29 C.F.R. § 1630.9. "Reasonable

---

[2]Herrera testified:

| Question: | And did you work a full day? |
|---|---|
| Answer: | I believe so, yes. |
| Question: | Did you do the shipping clerk's job? |
| Answer: | No. |

(Herrera Deposition, p. 45).

11

accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations." 42 U.S.C. at § 12111(9)(B). The employer has broad discretion in determining which accommodation should be provided. *See* 29 C.F.R. § 1630.9.

Herrera stipulates that if he had received assistance in lifting cartons that weighed over 40 pounds he could have continued to work. Nonetheless, the ADA does not require employers to modify the duties of other employees in order to provide a reasonable accommodation. An employer is not required to eliminate or reallocate essential functions of a position in order to provide accommodation. *See Bradley v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 3 F.3d 922, 925 (5th Cir. 1993) (holding that "such redefinition exceeds reasonable accommodation").

Herrera further avers that his job was modified after his surgery so that he would be responsible only for the shipment and receipt of boxes of 35 to 42 pounds. According to CTS, this accommodation is not reasonable because it first involves determining whether cartons weigh more or less than 40 pounds. CTS argues that this "pre-weighing" would have to be done by another CTS employee. According to CTS, "[w]hile the carton is being pre-weighed, efficiency demands that this weighing also be used as the weighing to calculate shipping charges, another essential function of a Shipping Clerk." (CTS's Motion for Summary Judgment, Docket No. 16).

> [T]he law does not require an employer to transfer from the disabled employee any of the essential functions of his job. If it is necessary to transfer any of the essential functions of [the] job to others[,] the [plaintiff] is not otherwise qualified. We cannot say that he can perform the essential functions of the job with reasonable accommodation if the only successful accommodation is for [the plaintiff] not to

12

perform these essential functions.

*Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702 (5th Cir. 1997).  By restructuring the Shipping

Clerk's position so that the Shipping Clerk is only responsible for the lifting, weighing, and shipping

of cartons that weigh less than 42 pounds, CTS is ultimately reallocating the essential functions of

the Shipping Clerk's job to other employees.  This is beyond what the ADA requires.  *See Bradley*,

3 F.3d at 925 (holding that while job restructuring is a possible accommodation under the ADA, an

employer need not reallocate the essential functions of a job).  "It is not reasonable to require an

employer to have two people doing one person's job in the name of accommodation.  Assistance is

one thing, but performing a significant portion of the essential functions of another person's job is

another thing altogether."  *Hershey v. Praxair, Inc.*, 969 F.Supp. 429, 435 (S.D. Tex. 1997).

   This Court concludes that even with reasonable accommodation, Herrera has failed to show

that he can perform the essential functions of a Shipping Clerk and that he has not provided a

sufficient explanation for the apparent inconsistency between his receipt of disability benefits and

his claim that he is able to perform the essential functions of a Shipping Clerk.

   DONE at Brownsville, Texas, this 15th day of January, 2002.

                                John Wm. Black
                                United States Magistrate Judge